980 F.2d 728
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Astill H. JADUSINGH, SR., a/k/a Sing, Defendant-Appellant.
 No. 91-5911.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 26, 1992
Decided: December 10, 1992
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Richard L. Williams, Senior District Judge. (CR-85-108-R)
 Ira N. Loewy, Bierman, Shohat, Loewy & Perry, P.A., Miami, Florida, for Appellant.
 N. George Metcalf, Assistant United States Attorney, Richmond, Virginia, for Appellee.
 Richard Cullen, United States Attorney, Cameron S. Heaps, Third Year Law Intern, Richmond, Virginia, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before PHILLIPS, WILKINS, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Astill H. Jadusingh, Sr. appeals his convictions for importation of marijuana, see 21 U.S.C.A. § 952(a) (West Supp. 1992), and possession with intent to distribute marijuana, see 21 U.S.C.A. § 841(a)(1) (West 1981). He primarily argues that insufficient evidence exists to support the verdict of the jury. We disagree, and therefore affirm the convictions.
 
 I.
 
 2
 We relate the evidence presented at trial in the light most favorable to the Government. See Glasser v. United States, 315 U.S. 60, 80 (1942). Florizell Foy, a coconspirator, testified that in early 1982, Jadusingh met William R. Berger on a flight from Jamaica to the United States. They discussed Semispheres Domes, Inc., a concern owned by Berger that manufactured low-cost homes. The conversation then turned to marijuana dealings. Jadusingh told Berger that he grew marijuana and that he could surpass Berger's current suppliers in terms of cost and quality.
 
 
 3
 In August 1982, members of the conspiracy transported 1,200 pounds of marijuana from Jamaica to Richmond, Virginia, where it was stored at a stash house for subsequent distribution. A grand jury returned a multiple-count indictment in March 1986, charging Jadusingh with drug violations stemming from this and other importations of marijuana.[1] At trial, Jadusingh argued that his relationship with Berger and Berger's associates related solely to Semispheres Domes and his efforts to expand the business to Jamaica. Jadusingh further maintained that his brother, Francis Jadusingh, actually supplied the marijuana for Berger's drug operations.
 
 
 4
 In addition to Foy's testimony, Hilton Lee Brooks, another member of the conspiracy, unequivocally identified Jadusingh as one of the men with Berger at the stash house on the night of the delivery in August 1982. Another witness, Riley Montgomery, also testified that he saw Jadusingh at the stash house. The jury returned a verdict of guilty, and the district court subsequently sentenced Jadusingh to ten years imprisonment, three years of parole, a fine of $40,000, and the mandatory special assessment.[2]
 
 II.
 
 5
 Jadusingh contends that the record lacks any direct evidence of his involvement in the August 1982 shipment of marijuana. Although he concedes that two witnesses testified to seeing him at the stash house, Jadusingh argues that mere presence at the scene of a crime, even in association with other members of a criminal conspiracy, is not a sufficient basis on which to base a finding of guilt. Cf. United States v. Rusher, 966 F.2d 868, 878 (4th Cir.) ("Mere presence on the premises where the drugs were found or association with the possessor ... is insufficient to establish possession."), cert. denied, 61 U.S.L.W. 3285 (U.S. Oct. 13, 1992) (No. 92-5734); United States v. Spoone, 741 F.2d 680, 686 (4th Cir. 1984) (noting that mere presence at scene of crime is not enough to establish aiding or abetting), cert. denied, 469 U.S. 1162 (1985).
 
 
 6
 We are not persuaded by Jadusingh's view of the evidence. Several pieces of circumstantial evidence tied Jadusingh to the marijuana, and "circumstantial evidence is treated no differently than direct evidence, and may be sufficient to support a guilty verdict even though it does not exclude every reasonable hypothesis consistent with innocence." United States v. Jackson, 863 F.2d 1168, 1173 (4th Cir. 1989); see United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982) (noting that reviewing court "must consider circumstantial as well as direct evidence"). In addition to the testimony placing him at the stash house at the time of the delivery, the Government also presented testimony that Jadusingh had a financial interest in the marijuana. And, although Jadusingh presented evidence that his brother was involved in illicit drug activity, the jury properly resolved the conflict between this testimony and that presented by the Government. See United States v. Fisher, 484 F.2d 868, 869-70 (4th Cir. 1973) (per curiam) (observing that jury, not appellate court, must resolve conflicts and weigh credibility), cert. denied, 415 U.S. 924 (1974).
 
 
 7
 Reversal of a conviction because of insufficient evidence should "be confined to cases where the prosecution's failure is clear." Burks v. United States, 437 U.S. 1, 17 (1978) (footnote omitted). A jury verdict must be sustained if, viewed in the light most favorable to the government, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); cf. Rusher, 966 F.2d at 879 (noting that "far from overwhelming" evidence was sufficient to support conviction). Guided by these principles, we are compelled to sustain Jadusingh's convictions.[3]
 
 III.
 
 8
 Jadusingh also attacks the decision of the district court to admit testimony offered by several coconspirators under Federal Rule of Evidence 801(d)(2)(E) because the statements amounted to little more than "idle conversation" that did not further the purpose of the conspiracy. United States v. Urbanik, 801 F.2d 692, 698 (4th Cir. 1986).
 
 
 9
 We have reviewed these statements and conclude that district court did not abuse its discretion by admitting them. See United States v. Blevins, 960 F.2d 1252, 1255 (4th Cir. 1992).
 
 
 10
 Jadusingh also maintains that he was denied a fair trial by the refusal of the district court to admit several exhibits offered during trial and by statements made by the district court during the trial. See United States v. Parodi, 703 F.2d 768, 776 (4th Cir. 1983) (requiring examination of entire trial to determine if judge's behavior rises to level of prejudice to deny appellant a fair trial); Wells v. Murray, 831 F.2d 468, 476 (4th Cir. 1987) (noting that exclusion of evidence may be so significant to deny defendant due process, thus constituting reversible error). Our review of this contention, in light of the record taken as a whole, indicates that it is without merit.
 
 
 11
 Accordingly, Jadusingh's convictions are affirmed.
 
 AFFIRMED
 
 
 [1]
 In addition to the two convictions challenged in this appeal, Jadusingh was also convicted of conspiracy to import marijuana, see 21 U.S.C.A. §§ 952(a), 963 (West Supp. 1992), and conspiracy to possess with intent to distribute marijuana, see 21 U.S.C.A. §§ 841(a)(1), 846 (West 1981 & Supp. 1992). He does not contest these convictions in this appeal. The Government voluntarily dismissed two other counts prior to trial, and the jury acquitted Jadusingh on the four remaining counts of the indictment
 
 
 [2]
 These offenses occurred prior to November 1, 1987. Consequently, Jadusingh was not sentenced under the Sentencing Guidelines
 
 
 [3]
 To the extent that Jadusingh maintains that his convictions cannot withstand appellate scrutiny because of our reversal of his coconspirator's convictions, see United States v. Martin, No. 86-5604 (4th Cir.) (reversing two counts of conviction for lack of substantial evidence), cert. denied, 484 U.S. 848 (1987), this claim is foreclosed by United States v. Thomas, 900 F.2d 37, 40 (4th Cir. 1990) (rejecting argument that verdicts of coconspirators must be consistent). Further, any contention that we must reverse his convictions because the jury acquitted him on several counts charged in the indictment is effectively precluded by United States v. Powell, 469 U.S. 57, 64-68 (1984) (defendant cannot challenge conviction as inconsistent with acquittal on another count)