UNITED STATES of America, Plaintiff,

v.

Antonio RAMOS, aka Jose Zepeda, and Eulalio Vazquez Granados, aka Auroelio Granados, Eulalio Vasquez Granados, Eulalio Granados, Defendants.

No. 93–40033–01/02–SAC.

United States District Court,
D. Kansas.

Nov. 17, 1993.

Gregory G. Hough, U.S. Atty., for U.S.

F.G. Manzanares, Topeka, KS, for Antonio Ramos.

Marilyn M. Trubey, Asst. Federal Public Defender, Topeka, KS, for Eulalio Vazquez Granados.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendants' following pretrial motions: Ramos' motion to compel disclosure of existence and substance of promises of immunity, leniency or preferential treatment (Dk. 28); Ramos' motion for trial severance (Dk. 29); Ramos' motion for 404(b) disclosure (Dk. 30); Ramos' motion for bill of particulars (Dk. 31); and Granados' motion to strike aliases (Dk. 24). The defendant Granados has filed also a motion to suppress statements he made to law enforcement officers on August 30, 1993. (Dk. 25). The court will not take up the motion to suppress, because there is a bench warrant for Granados' arrest and this motion would require an evidentiary hearing involving factual matters on which Granados could assist his counsel. On November 15, 1993, the court held a hearing at which the defendant Ramos waived oral argument on his motions and the defendant Granados orally argued his motion to strike. The court is now ready to rule.

**Motion to Compel Disclosure of Existence and Substance of Promises of Immunity, Leniency or Preferential Treatment (Dk. 28).**

The defendant Ramos' motion does not comply with the court's Criminal Procedural Guidelines I.A. The defendant's motion merely requests disclosure without stating in

784

particularity the legal and factual grounds being advanced. Nor is the defendant's motion accompanied by a separate concise memorandum that cites all authorities on which the movant relies. The Guidelines provide that the court may summarily deny motions which fail to meet these requirements. The court expects the defendant and his counsel to comply with the spirit and the letter of all requirements set forth in the Guidelines.

The government responds that no promises of immunity, leniency or preferential treatment exist in this case. The court denies the defendant's motion as moot and reminds the government of its continuing obligations under *Brady.*

**Motion for Trial Severance (Dk. 29).**

This motion by the defendant Ramos also does not comply with the court's Criminal Procedural Guidelines I.A. The court cannot discern the defendant's reasons for the request other than the conclusory statement that he would not receive a fair trial without severance. The intent behind the court's Guidelines was to prevent situations where there is a likelihood that the government's counsel will not be prepared to respond and the court will not be prepared to follow the defendant's arguments first made at the hearing. Because the defendant offered no arguments at the hearing, the court, in this instance, is left to decide the motion on nothing more than a conclusory statement. The court seriously questions the need for filing a motion to sever if counsel cannot articulate a specific factual basis, well-grounded in law, to support it.

Rule 8 of the Federal Rules of Criminal Procedure provides that "two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transactions constituting an offense or offenses." The defendant here does not argue he was joined improperly under Rule 8. Even if joinder is proper under Rule 8, severance is possible under Rule 14 when the defendant or the government would be prejudiced. *Zafiro v. United States,* — U.S. —, —, 113 S.Ct. 933, 937, 122 L.Ed.2d 317, 324 (1993).

Rule 14 of the Federal Rules of Criminal Procedure provides in pertinent part:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance or provide whatever other relief justice requires ...

In deciding a motion to sever, the district court must "weigh the prejudice resulting from a single trial of counts against the expense and inconvenience of separate trials." *United States v. Hollis* 971 F.2d 1441, 1456 (10th Cir.1992) (citation omitted), *cert. denied,* — U.S. —, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1992). Because severance is a matter of judicial discretion and not a right of the parties, the defendant must carry " 'a heavy burden of showing real prejudice to his case.' " *United States v. McConnell,* 749 F.2d 1441, 1444 (10th Cir.1984) (quoting *United States v. Petersen,* 611 F.2d 1313, 1331 (10th Cir.), *cert. denied,* 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1979)). "The Supreme Court has emphasized that trial courts have 'a continuing duty at all stages of the trial to grant a severance if prejudice does appear.' " *United States v. Peveto,* 881 F.2d 844, 857 (10th Cir.), *cert. denied,* 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989) (quoting *Schaffer v. United States,* 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960)).

The federal criminal justice system prefers and values joint trials. *Zafiro,* — U.S. at —, 113 S.Ct. at 937, 122 L.Ed.2d at 324. Joint trials promote economy and efficiency and "serve the interests of justice by avoiding the scandal and inequity of inconsistent trials." *Richardson v. Marsh,* 481 U.S. 200, 209, 107 S.Ct. 1702, 1709, 95 L.Ed.2d 176 (1987). These interests are most apparent when co-defendants are jointly indicted and face common conspiracy charges. *See United States v. Jenkins,* 904 F.2d 549, 557 (10th Cir.), *cert. denied,* 498 U.S. 962, 111 S.Ct. 395, 112 L.Ed.2d 404 (1990). Consequently, "[c]ourts generally adhere to the principle that 'those indicted together, especially co-conspirators, should be tried together.' "

*Peveto,* 881 F.2d at 857 n. 16 (quoting 8 J. Moore, W. Taggert & J. Wicker, *Moore's Federal Practice* ¶ 14.05, p. 14–82 (2 ed. 1989); *United States v. Petersen,* 611 F.2d at 1332 (" '[m]utual participation of defendants in an offense or series of offenses is considered a logical, basic ground for refusing to grant a motion to sever' "). (quoting *United States v. Riebold,* 557 F.2d 697 (10th Cir.), *cert. denied,* 434 U.S. 860, 98 S.Ct. 186, 54 L.Ed.2d 133 (1977)). "In the context of conspiracy, severance will rarely, if ever, be required." *United States v. Searing,* 984 F.2d 960, 965 (8th Cir.1993) (citation omitted). In this setting, joint trials "reduce the chance that each defendant will try to create a reasonable doubt by blaming an absent colleague" and provide "the jury the best perspective on all of the evidence and therefore increases the likelihood of a correct outcome." *United States v. Buljubasic,* 808 F.2d 1260, 1263 (7th Cir.), *cert. denied,* 484 U.S. 815, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987) (citations omitted).

■ The Supreme Court recently summarized the law on severance under Rule 14 and identified certain relevant circumstances and their relative weight in deciding a request to sever:

> We believe that, when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. *See Kotteakos v. United States,* 328 U.S. 750, 774–775, 90 L.Ed. 1557, 66 S.Ct. 1239 [1252–1253] (1946). Evidence that is pro-

bative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice. *See Bruton v. United States,* 391 U.S. 123, 20 L.Ed.2d 476, 88 S.Ct. 1620 (1968). Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial. *See, e.g., Tifford v. Wainwright,* 588 F.2d 954 (5th Cir.1979) (per curiam). The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here. When risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but, as we indicated in *Richardson v. Marsh,* less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice. *See* 481 U.S. at 211 [107 S.Ct. at 1709].

*Zafiro,* —— U.S. at ——, 113 S.Ct. at 938, 122 L.Ed.2d at 325. Even upon a showing of some risk of prejudice, the trial court is not required to sever for it retains the discretion to create a remedy which would abate that risk. *Id.*

■ The defendants are charged with conspiring with each other to possess marijuana with the intent to distribute it. The defendant Ramos has not cleared the high hurdle of showing unfair prejudice from a joint trial on these charges.

**Motion for Disclosure by Government (Dk. 30).**

The defendant Ramos requests the government to disclose the evidence it intends to offer under Fed.R.Evid. 404(b). The government responds that it does not plan to use any Rule 404(b) evidence in its case-in-chief but that it may introduce intrinsic evidence which has been disclosed to the defendant. The defendant's motion is denied as moot.

**Motion for Bill of Particulars (Dk. 31).**

As with his other motions, the defendant Ramos' motion for bill of particulars does not comply with the court's Criminal Procedural Guidelines I.A. The defendant asks for additional information regarding the conspiracy without arguing in what ways the indictment

is deficient. The defendant's sole argument is that he needs this information to prepare an adequate defense.

"An indictment is sufficient 'if it contains the elements of the offense charged, putting the defendant on fair notice of the charge against which he must defend and if it enables a defendant to assert an acquittal or conviction in order to prevent being placed in jeopardy twice for the same offense.'" *United States v. Poole*, 929 F.2d 1476, 1479 (10th Cir.1991) (quoting *United States v. Staggs*, 881 F.2d 1527, 1530 (10th Cir.1989), *cert. denied*, 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990)). In the Tenth Circuit, it is usually enough for the indictment to track the statute when the statute adequately expresses all of the elements to the offense. *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir.1988). An indictment is held only to minimal constitutional standards. *United States v. Edmonson*, 962 F.2d 1535, 1541 (10th Cir.1992). The sufficiency of an indictment is judged "by practical rather than technical considerations." *Id.* The district court has broad discretion in deciding a motion for bill of particulars. *Id.*

"'The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense.'" *Dunn*, 841 F.2d at 1029 (quoting *United States v. Cole*, 755 F.2d 748, 760 (11th Cir.1985)). Though it may provide more information, a bill of particulars is not intended to serve as a discovery device or to compel the government's disclosure of the factual proof planned for trial. *Dunn*, 841 F.2d at 1029. Nor is it a way to require the government's explanation of the legal theories expected at trial. *United States v. Gabriel*, 715 F.2d 1447, 1449 (10th Cir.1983). "[T]he defendant is 'not entitled to know all the *evidence* the government intends to produce, but only the *theory* of the government's case.'" *Dunn*, 841 F.2d at 1030 (quoting *United States v. Giese*, 597 F.2d 1170, 1181 (9th Cir.), *cert. denied*, 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979)).

A comparison of the allegations in count one with those found in the case law establishes the sufficiency of the indictment. Besides quoting the essential elements of 21 U.S.C. § 846, the indictment includes the dates of the alleged conspiracy, defines the nature of the conspiracy as one to possess with the intent to distribute approximately 76 kilograms of marijuana, describes the location of the conspiracy as within the District of Kansas, and identifies the specific controlled substance. An indictment for conspiracy to distribute controlled substances "need not go further and allege 'in detail the factual proof that will be relied upon to support the charges.'" *Dunn*, 841 F.2d at 1029 (quoting *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir.1978), *cert. denied*, 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979)). The omission of overt acts is not a deficiency, for "a conspiracy indictment under 21 U.S.C. § 846 need not allege any specific overt acts in furtherance of a conspiracy." *United States v. Brown*, 934 F.2d 886, 889 (7th Cir. 1991). The indictment gives notice of the most relevant names to the charges—those of the principal co-conspirators. *See United States v. Hallock*, 941 F.2d 36, 40 (1st Cir. 1991). The failure to name all co-conspirators is not fatal. *See United States v. Dunnigan*, 944 F.2d 178, 181 (4th Cir.1991), *rev'd on other grds*, —— U.S. ——, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993).

"An indictment charging a count of conspiracy is sufficiently precise as to the time frame if the operative period of the conspiracy is set out." *United States v. Edmonson*, 962 F.2d at 1541; *see United States v. Harrison–Philpot*, 978 F.2d 1520, 1525 (9th Cir.1992) (indictment is sufficient when it places the illegal conduct "within an identifiable time frame"), *cert. denied*, —— U.S. ——, 113 S.Ct. 2392, 124 L.Ed.2d 294 (1993). It is not necessary to specify the exact dates on which the defendants committed the alleged conspiratorial acts. *United States v. Ellender*, 947 F.2d 748, 756 (5th Cir.1991). It is enough that the defendant through discovery learns the basics of the government's conspiracy case without knowing the precise time and place of the acts constituting the

alleged conspiracy. The court denies the defendant's motion for bill of particulars.

## Motion to Strike Aliases (Dk. 24).

The defendant Granados moves to strike from the caption and body of the indictment the three aliases of "Auroelio Granados, Eulalio Vasquez Granados, and Eulalio Granados." The defendant argues the aliases are not necessary to identify the accused, and he generally denies that he has ever been known by these other names. The aliases are needless, in the defendant's opinion, and should be deleted from the indictment as inherently prejudicial.

The government counters that the aliases may be used at trial for the purposes of "identifying the defendant as fluent in English, understanding the consequences of his actions, showing a relationship with Ramos, and showing his use of various spellings of his name in various instances to conceal his true identity." The government further says the aliases are relevant because the defendant disputes his identity "as a knowing drug trafficker." At the hearing, the government explained that the aliases were taken from documents found in the truck that Ramos had been driving when he was arrested. Finally, the government argues that any prejudice will be mitigated by the court's instruction that the indictment is not evidence.

 "The court on motion of the defendant may strike surplusage from the indictment or information." Fed.R.Crim.P. 7(d). Courts generally disapprove of including aliases in the indictment as an ordinary course and believe their use "should be curbed." *United States v. Wilkerson*, 456 F.2d 57, 59 (6th Cir.) (citing *Petrilli v. United States*, 129 F.2d 101, 104 (8th Cir.), *cert. denied*, 317 U.S. 657, 63 S.Ct. 55, 87 L.Ed. 528 (1942)), *cert. denied*, 408 U.S. 926, 92 S.Ct. 2506, 33 L.Ed.2d 337 (1972). The rule most often followed is that aliases may be used when "the Government intends to introduce evidence of an alias and the use of that alias is necessary to identify the defendant in connection with the acts charged in the indictment." *United States v. Clark*, 541 F.2d 1016, 1018 (4th Cir.1976) (citing *United States v. Skolek*, 474 F.2d 582, 586 (10th

Cir.1973)); *United States v. Miller*, 381 F.2d 529 (2nd Cir.1967), *cert. denied*, 392 U.S. 929, 88 S.Ct. 2273, 20 L.Ed.2d 1387 (1968); *see also United States v. Ruggiero*, 824 F.Supp. 379, 397 (S.D.N.Y.1993). If the government at trial fails to show either the defendant's use of the alias or the relevancy of the alias in proving the crimes charged in the indictment, the defendant may renew his motion to strike, and the court may strike the alias and instruct the jury appropriately. *United States v. Clark*, 541 F.2d at 1018.

The court does not agree with the defendant that this case is simply an instance of a misspelling as in *United States v. Beedle*, 463 F.2d 721 (3rd Cir.1972). The government's attorney there agreed to strike an alias which was a misspelling admittedly made by the prosecution itself. Unlike *Beedle*, the government's attorney here does not agree that the aliases are simply misspellings that he or someone else made. Instead, the government contends the aliases were found on documents that are prepared typically in circumstances where a person could correct and would want to correct any spelling errors in his name.

 The prosecution has not expressly said that these documents will be used at trial. Assuming they are, the other issue is the relevance of the aliases. In most instances, aliases are used to identify the defendant in connection with the acts charged in indictment, such as recorded conversations that refer to the defendant by nickname. *See, e.g., United States v. Rodriguez*, 734 F.Supp. 116, 128–29 (S.D.N.Y.1990), *aff'd*, 968 F.2d 130 (2nd Cir.), *cert. denied*, ——— U.S. ———, 113 S.Ct. 139, 121 L.Ed.2d 92 (1992). The government does not show that the aliases here are used in a way to identify the defendant in connection with the acts charged in the indictment. The government has not presented any arguable link between the offenses charged and a pay check from "Mexican Products, Inc.," a Kansas' drivers license, a Texas Department of Public Safety identification card, or a airline passenger ticket. The court is left to speculate that the defendant's use of the aliases on these documents somehow identifies the defendant as a knowing drug trafficker. The government's

blanket assertion does not persuade the court that these documents and aliases evidence a relationship between the defendants.

 The use of a false or altered name may indicate consciousness of guilt in the associated conduct. *U.S. v. Ruggiero,* 824 F.Supp. at 397. In other words, if the government shows the defendant used aliases while performing his role in the alleged drug conspiracy, then the aliases would suggest the defendant was aware his actions were unlawful. As said before, the government here does not show how these aliases were used in connection with the charged offenses. Moreover, the government does not explain how these aliases are so materially different as to support a reasonable inference that the defendant was trying to conceal his identity.

The court does not find merit in the government's argument that the defendant's use of aliases demonstrates his fluency in English. The government does not offer anything to support its assumption that the names appearing on these documents are sufficiently different that a reasonable person, fluent in English, would expect that the government agencies or commercial business involved in issuing the documents would view the different names as belonging to different persons rather than as minor deviations to a single person's name. Finally, the court has reviewed the relevant portions of the Kansas Motor Vehicle Driver's License Act, K.S.A. 8–234a—269. The Act does not require expressly, implicitly, or as a practical matter that a person be able to read and understand English in order to obtain a Kansas driver's license.

Because the government has failed to show the relevance of the aliases, the court grants the defendant Granados' motion to strike on the following condition. If the government introduces evidence of an alias being used by Granados and this use is relevant to the conduct charged in the indictment, then the court will consider adding that alias to the indictment in instructing the jury at the close of the evidence.

IT IS THEREFORE ORDERED that the defendant Ramos' motion to compel disclosure of existence and substance of promises of immunity, leniency or preferential treatment (Dk. 28); motion for trial severance (Dk. 29); motion for 404(b) disclosure (Dk. 30); and motion for bill of particulars (Dk. 31) are denied.

IT IS FURTHER ORDERED that Granados' motion to strike aliases (Dk. 24) is granted on the condition stated above.